IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| IDA M. SMITH, ) | 8:05CV275 |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **MEMORANDUM** |
| ) | **AND ORDER** |
| JO ANNE B. BARNHART, ) | |
| Commissioner of the Social Security ) | |
| Administration, ) | |
| ) | |
| Defendant. ) | |

This is a social security appeal. Ida M. Smith (Smith) asserts that she is unable to work due to disabling pain. There is not very much medical evidence in the record. The Commissioner asserts that the medical evidence is sufficient, when considered with the other relevant evidence of record, to make a finding as to Smith's residual functional capacity (RFC), and that Smith has the RFC to return to some of her past relevant work. Smith asserts that there is not enough medical evidence, and that the Administrative Law Judge (ALJ) should have further developed the record by obtaining a consultative examination. Smith also asserts that the ALJ improperly discounted her credibility. Finding no error, I affirm the decision of the Commissioner.

## *I. BACKGROUND*

I first summarize the procedural history of this case. After that, I will briefly review the medical evidence of record. I then summarize the ALJ's decision. Finally, I assess the post-hearing evidence considered by the Appeals Council in denying review.

## A. *Procedural History*

Smith was born on August 2, 1941, has a high school education and completed one year of college. (Tr. 67, 237.) She filed an application for social security disability benefits on October 21, 2002, alleging that she became unable to work because of a "disabling condition" on May 30, 2002. (Tr. 67, 232.) She later amended the onset date to July 1, 2002. (Tr. 15, 232.) Smith's claim was denied initially and on reconsideration (Tr. 25-26, 27.) An ALJ held a hearing on June 24, 2004 and on October 22, 2004 found that Smith was not disabled. (Tr. 11-22.) The Appeals Council, after considering additional evidence, denied review. (Tr. 5-8.)[1]

## B.   *Medical Evidence*

The medical evidence consists of Smith's treatment records, the opinion of the state disabilities examiner, and the one-page letter written by a nurse months after the ALJ's decision. Smith's treatment records are summarized below.

> 4/9/02      Presents at Charles Drew Health Center, complaining of chest pain and right hip and leg pain after falling in 1999. (Tr. 171.) On physical examination, right hip range of motion was intact and there was no swelling. Tenderness to palpation was noted. (Tr. 172.) Basic blood work shows triglycerides over recommended range & cholesterol, lipids and endocrine function normal. Lipitor was prescribed. (Tr. 206-07.) Dr. Paknikar recommends an EKG and chest X-ray, but Smith declined to wait for the tests and left the clinic. (Tr. 172.)

---

[1]The additional evidence is found at Tr. 227-29. It consists of a one-page document signed by a practical registered nurse.

| | |
|---|---|
| 4/26/02 | Testing at Saint Joseph Hospital: perfusion study was normal and adenosine cardiolyte cardiac stress test was negative for ischemia. (Tr. 184-85.) |
| 5/16/02 | Seen at Charles Drew Health Center by Dr. Paknikar, with complaints of arthritic knee pain and weakness, with numbness on one side. Physical examination unremarkable. Diagnosis is possible TIA, costochondritis, and arthritis of the knee (which knee unspecified). Smith is referred to Saint Joseph Hospital for a vascular doppler and further evaluation. Dr. Paknikar noted that Lipitor had been prescribed but Smith had not taken it, and prescribed Celebrex. (Tr. 169-70.) |
| 5/16/02 | Smith presents to Saint Joseph Hospital emergency room with chest pains. (Tr. 179.) Smith reported a history of one year of pain and swelling of her right arm, which began after a fall, and stated that "my arm be dead for 2 yrs. now" and "my leg is dead sometimes." (Tr. 180.) Musculoskeletal examination was "normal." (Tr. 180.) A Doppler examination showed only "mild stenosis . . . of both internal carotid arteries." (Tr. 181.) A CT scan of the head indicated no intracranial abnormality. (Tr. 182.) Smith was noted to be in overall "good" condition, and was to follow up with Dr. Paknikar in two to three days if her condition was not improved or resolved, or earlier if it worsened. (Tr. 183.) Discharge diagnosis by James P. Balters, M.D. was reflex sympathetic dystrophy, based on "mild edema" of right hand. (Tr. 176, 179.) Prednisone was prescribed. (Tr. 178.) |
| 7/1/02 | alleged onset of disability |
| 11/13/02 | First visit to Renaissance Health Clinic (a low-income clinic). Complaints upon presenting were consistent with history taken by Saint Joseph Hospital on 5/16/02. (Tr. 211.) Physical examination showed no limitations in right |

|  |  |
|---|---|
|  | shoulder range of motion although there was subscapular tenderness with palpation. Right right hip tenderness was noted. (Tr. 211.)  Nurse Eva Tolle's notes state: "This is the first visit I have seen Ida Smith.  She has musculoskeletal pain right shoulder, right hip. This pain is limiting her ability to function at job. I will suggest ongoing treatment with anti-inflammatories to help control this pain, but I am not sure how effective this will be." (Tr. 213.)  Vioxx was prescribed and tylenol tablets were recommended.  (Tr. 211, 213.) |
| 11/21/02 | Renaissance Health Clinic records reflect Smith failed to appear at a scheduled followup appointment.  (Tr. 210.) |
| 2/11/03 | Treated at Renaissance Health Clinic.  Smith again presented with pain, but stated that "medication (vioxx) for pain gave relief of pain."  Physical examination showed full range of motion in her right shoulder and right hip with no point tenderness, straight leg raising was also negative bilaterally. Smith had a full range of motion of her back, with some limitation upon extension and no point tenderness.  Nurse Diane Miller assessed pain in the right shoulder and hip and left lateral rib and recommended followup in one month for shoulder and hip pain.  (Tr. 209.) |
| 7/7/04 | Presents at Renaissance Health Clinic with similar complaints of pain.  Smith stated that she did not regularly take ibuprofen.  Nurse Diane Miller noted "right shoulder and right hip pain, left knee pain, c/o arthritis". Smith's right shoulder showed tenderness, but she had full range of motion and strength. There was significant tenderness over her right paracervical area when her head was turned to the right, but again she had full range of motion (Tr. 220). Plaintiff's right hip showed "slight" tenderness, but she had full range of motion and +4 strength (Tr. 220). |

> 12/6/04   Nurse Tolle of Renaissance Health Clinic writes one-page letter regarding Smith. Letter is based on the clinic's records and Smith was not treated on that date. Letter refers to 10/26/04 visit, although no such records are included in the transcript.

The state disabilities examiner, Dr. Tom Chael, noted that Smith had been diagnosed by Dr. Balters with reflex sympathetic dystrophy (RSD) based on mild edema of her hand.[2] Dr. Chael found that the RSD diagnosis was "not used by other evaluators, does not explain her more generalized symptoms, and is not well-supported." (Tr. 167.) Dr. Chael opined that Smith did not have a severe impairment.

Additional evidence consisting of a one-page statement dated December 6, 2004, from Eva Toelle, a nurse practitioner with the Renaissance Health Clinic, which was submitted to and considered by the Appeals Council.[3] Nurse Toelle stated that Plaintiff was a difficult historian and was inconsistent with details of her injury and discomfort, but she showed limitations with range of motion in her right shoulder and there was palpable discomfort of her right hip. (Tr. 228.) Ms. Toelle opined that Plaintiff's right hand numbness and weakness could be due to tendinitis. (Tr. 228). She concluded that Plaintiff's condition could be further evaluated if right shoulder and hip, left knee, and right wrist and hand studies were obtained. (Tr. 228.) Ms.

---

[2]RSD is a chronic pain syndrome usually resulting from trauma to an extremity. The involved area usually has increased sensitivity to touch. The diagnostic criteria for RSD requires persistent pain resulting in impaired mobility of the affected region, together with swelling, changes in skin color or texture or temperature, abnormal hair or nail grown, osteoporosis, and involuntary movements of the affected region. SSR 03-2P, 2003 WL 22399117 (policy statement on evaluating RSD).

[3]I must consider this evidence because the Appeals Council considered it, although it was not before the ALJ. Riley v. Shalala, 18 F.3d 619, 622 (8th Cir. 1994) (When Appeals Council considers additional evidence, the question on review is whether the ALJ's decision is supported by substantial evidence on the record as a whole.).

Toelle stated that she first saw Plaintiff in November 2002, and <u>admitted that she did not know what restrictions Plaintiff had as of Plaintiff's alleged onset date of July 1, 2002</u>. (Tr. 228 (emphasis added).) She opined that Plaintiff could not perform work requiring lifting, or "extensive" walking, standing, or sitting. (Tr. 228.) This was based on Tolle's belief that Smith "had worked as a blue-collar factory worker." (Tr. 228.)

### C. *The Hearing Before the ALJ*

Prior to the hearing, Smith's counsel had forwarded medical records and Smith's answers to interrogatories to the ALJ. Smith's answers to interrogatories included a statement to the effect that her last employer had done "some testing." In response, the ALJ faxed a note to Smith's counsel asking him to "update all medical evidence–Do any treating drs (ortho?) impose any work restrictions." (Tr. 140, 233.)

The ALJ observed at the outset of the June 24, 2004 hearing that there was no evidence in the record that any treating doctor had imposed work restrictions on Smith. (Tr. 232-33.) The ALJ asked whether the "testing" by Smith's last employer assessed her functional capacities and Smith's counsel explained that it did not. (Tr. 233.) The ALJ then noted "we're at this point where we've got to find something to show if there is any work restrictions." (Tr. 234.)

During the hearing, the ALJ noted that she was keeping the record open for thirty days after the hearing to give Smith an opportunity to provide more medical evidence. (Tr. 261.) Smith visited the Renaissance Health Clinic approximately two weeks later, on July 7, 2004. On July 10, 2004, Smith's counsel wrote the Renaissance Health Clinic and asked the opinion of that clinic about Smith's physical

restrictions caused by her medical conditions. (Tr. 215.) There was no response to the request. (Tr. 214.)[4]

### D. *The ALJ's Decision*

The ALJ reviewed the medical evidence and found that Smith suffered from the severe impairments of right hip and right shoulder pain. (Tr. 17.) The ALJ explicitly noted that she was "giving the claimant the benefit of the doubt in this instance and is finding that the claimant['s] impairments are severe." (Tr. 20.)

After noting the requirements of Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984), reviewing Smith's testimony, and considering the medical evidence, the ALJ found Smith to be partially credible. (Tr. 19-20.) The ALJ listed multiple reasons for discounting Smith's credibility. She took only over-the-counter medications, had not had medical treatment in the prior fifteen months, and her physical examinations generally reveal full range of motion. Range of motion was only occasionally noted as limited, and then the limitation was only minimal or slight. Only conservative treatment had been recommended. No treating doctors imposed work restrictions. The state disability determinations doctor (Dr. Chael) concluded that Smith did not have severe impairments. (Tr. 20.)

The ALJ then found that based on the objective medical evidence of record, and in spite of her severe impairments, Smith was capable of light work: she could occasionally lift and carry up to 20 pounds and 10 pounds frequently. She can sit stand, and walk for up to six hours in an eight-hour workday with normal breaks. She should avoid work on ladders, ropes, and scaffolds and can occasionally climb,

---

[4]The letter from Eva Tolle of the Renaissance Health Clinic was not written until several months later, on December 6, 2004, *after* Smith had requested Appeals Council review.

balance, stoop, kneel, crouch and crawl . Based on this RFC, Smith could not return to her past work as a janitor or daycare worker as she actually performed those jobs. A vocational expert testified at the hearing that Smith could return to her past relevant work as a bus monitor and a teacher's aide.

## II.  ANALYSIS

A denial of benefits by the Commissioner is reviewed to determine whether the denial is supported by substantial evidence on the record as a whole. Hogan v. Apfel, 239 F.3d 958, 960 (8th Cir. 2001). "Substantial evidence" is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's conclusion. Id., at 960-61; Prosch v. Apfel, 201 F.3d 1010, 1012 (8th Cir. 2000). Evidence that both supports and detracts from the Commissioner's decision must be considered, but the decision may not be reversed merely because substantial evidence supports a contrary outcome. See Moad v. Massanari, 260 F.3d 887, 890 (8th Cir. 2001).

Smith's primary assertion of error is that there is not substantial evidence in the record as a whole to support the ALJ's finding as to her RFC, and particularly that there is insufficient medical evidence to support the RFC finding. In a related argument, she asserts that the ALJ failed to properly develop the record. She also asserts that the ALJ improperly discounted her credibility. I consider these arguments in turn.

### A.  *Substantial Evidence to Support ALJ's RFC finding*

The claimant has the burden of establishing her RFC. Eichelberger v. Barnhart, 390 F.3d 584, 591(8th Cir. 2004). The ALJ determines the claimant's RFC "based on all relevant evidence, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations. Id.  A

claimant's RFC "'is a medical question.'" Id. (quoting Lauer v. Apfel, 245 F.3d 853, 858 (8th Cir. 2000)).  "'[S]ome medical evidence" must support the determination of the claimant's RFC . . . ." Id. (quoting Dykes v. Apfel, 223 F.3d 865, 867 (8th Cir. 2000) (per curiam)).

Smith in essence argues that the "medical evidence" needed to support the ALJ's RFC determination must be a physician's findings as to functional limitations. However, "medical evidence" is much more broadly defined. See, e.g., Pratt v. Sullivan, 956 F.2d 830, 835(8th Cir. 1992) (noting that determination of whether an impairment exists "must be established by medical evidence consisting of signs, symptoms, and laboratory findings."); 20 C.F.R. § 404.1529 (a) (the extent to which symptoms can reasonably be accepted as consistent with "objective medical evidence" are considered in determining disability, and "[b]y objective medical evidence, we mean medical signs and laboratory findings.").

There is "medical evidence" to support the RFC finding. The multiple treatment notes reflecting normal musculoskeletal examinations and no or minimal restriction in Smith's range of motion, despite Smith's asserted symptoms of pain constitute "medical evidence." So does the treatment history, which included only conservative treatment. The opinion of state agency physician Dr. Chael, who after a detailed review of the medical evidence opined that Smith did not have a severe impairment and found the one-time reflex sympathetic dystrophy syndrome unsupported by the medical evidence, is also medical evidence.

Smith asserts that the opinion from state agency physician (Dr. Chael) who did not examine Smith, considered alone, does not constitute substantial evidence on the record as a whole. However, under some circumstances the opinion of a nontreating physician can constitute substantial evidence–and this is one of them.

Even though "[t]he opinions of non-treating practitioners who have attempted to evaluate the claimant without examination do not normally constitute substantial evidence on the record as a whole, see Shontos v. Barnhart, 328 F.3d 418, 427 (8th Cir. 2003) (emphasis added), the Eighth Circuit has held that in an appropriate case "[r]esidual functional capacity assessments by non-treating physicians can constitute the requisite substantial evidence." Smallwood v. Chater, 65 F.3d 87, 89 (8th Cir. 1995). Cf. Harvey v. Barnhart, 368 F.3d 1013, 1016 (8th Cir. 2004) (opinions of non-examining, consulting physicians standing alone are not considered substantial evidence, but ALJ is entitled to rely upon such opinions where they are consistent with the record as a whole). The record before me contains no conflicting assessment of Smith's work-related discrimination by a treating physician. Smith's counsel wrote her most recent treating physicians at the Renaissance Health Clinic and asked them to opine as to whether Smith had any work-related restrictions. There was no response. (Tr. 214-16.) Jenkins v. Apfel, 196 F.3d 922, 924-25 (8th Cir. 1999), cited by Smith to support her arguments regarding insufficiency of medical evidence, is inapposite. In Jenkins, the only evidence in the record to support the ALJ's finding on RFC was a non-treating physician's assessment, and that assessment conflicted with the assessment of a treating physician.

Contrary to Smith's assertions, the ALJ did not improperly adopt Dr. Chael's opinion. After all, Dr. Chael found that Smith was not disabled and had no work-related limitations. The ALJ reached her own assessment based on all evidence of record. She did not, as Smith asserts, substitute her own opinion in lieu of medical evidence. Stormo v. Barnhart, 377 F.3d 801, 807 (8th Cir. 2004) (rejecting assertion that the ALJ improperly substituted his own opinion in establishing the claimant's RFC instead of relying on medical evaluations, as "there was substantial evidence in the record to support the ALJ's decision that [the claimant] was not disabled."). Here, the evidence supporting the finding of no disability includes the medical evidence as well as the reasons the ALJ discounted Smith's credibility (which I address later).

I note the import of the letter from nurse Eva Tolle of the Renaissance Health Clinic. It is considered medical evidence from an "other medical source" within the meaning of 20 C.F.R. § 404.1513(d). "In determining what weight to give 'other medical evidence,' the ALJ has more discretion and is permitted to consider any inconsistencies found within the record." Raney v. Barnhart, 396 F.3d 1007, 1010 (8th Cir. 2005) (citing 20 C.F.R. § 416.927(d)(4)). If the ALJ had Tolle's December 6, 2004 letter before her, she would have rejected it as inconsistent with the record. Tolle stated that Smith had worked as a blue-collar factory worker, when the record shows that she had worked as a janitor, daycare worker, bus monitor and teacher's aide. (Compare Tr. 228 with Tr. 20-21.) Tolle noted limitations in range of motion of Smith's right shoulder, yet the treatment records from Renaissance Health Clinic reflect that Smith had full range of motion of her right shoulder. (Tr. 209, 211.) Tolle's letter was written five months after Smith's counsel had requested Renaissance Health Clinic to opine as to Smith's health problems, diagnoses and any physical restrictions, and only after Smith requested review of the ALJ's decision by the appeal's counsel. Significantly, Tolle's letter was written in December 2004 and explicitly stated that Tolle had no opinion as to Smith's restrictions, if any, on the July 1, 2002 onset date.

## B. *The ALJ Did Not Fail to Develop the Record*

Noting the paucity of medical evidence, Smith asserts that the ALJ was required to further develop the record by seeking the opinions of her doctors or ordering consultative examinations. It is well settled that it is the ALJ's duty to develop the record fully and fairly, Strongson v. Barnhart, 361 F.3d 1066, 1071 (8th Cir. 2004), but this does not mean that the ALJ is obligated in every case to seek opinions from treating or examining physicians about the claimant's functional abilities. An ALJ is permitted to issue a decision without obtaining additional medical evidence so long as other evidence in the record provides a sufficient basis for the ALJ's decision. Haley v. Massanari, 258 F.3d 742, 749-50 (8th Cir. 2001). An

ALJ "does not . . . have to seek additional clarifying statements from a treating physician unless a crucial issue is undeveloped. Stormo, 377 F.3d at 806. In fact, an ALJ "may order consultative examinations only if the available evidence does not provide an adequate basis for determining the merits of the disability claim." Sultan v. Barnhart, 368 F.3d 857, 863 (8th Cir. 2004) (emphasis added).

I have already explained that there is medical evidence to support the ALJ's finding regarding Smith's RFC. That evidence, together with the other evidence of record, constitutes substantial evidence to support the Commissioner's decision. The record is sufficiently developed; Smith simply failed to show that she was unable to perform her past work. " Eichelberger, 390 F.3d at 592("An ALJ has the duty to develop the record independent of the claimant's burden in the case. Snead v. Barnhart, 360 F.3d 834, 838 (8th Cir.2004). However, the burden of persuasion to prove disability and to demonstrate RFC remains on the claimant. Id. Here, no crucial issue was left undeveloped; rather, [the claimant] simply failed to show that she was unable to perform her past work.").

Smith argues that the ALJ should have developed the record as to a possible cognitive impairment, noting Nurse Tolle's December 2004 letter (describing Smith as a difficult historian) and asserting that review of the hearing transcript indicates the likelihood of a cognitive impairment. I reject this argument. Having difficulty in consistently reporting symptoms, considered alone, does not indicate cognitive impairment. I have read the transcript of the hearing before the ALJ, and it does not present any red flags as to possible cognitive impairment.

### *C. The ALJ Properly Discounted Smith's Credibility*

To assess a claimant's credibility, the ALJ must consider all of the evidence, including prior work records and observations by third parties and doctors regarding daily activities; the duration, frequency, and intensity of pain and other subjective

limitations; precipitating and aggravating factors; the dosage, effectiveness, and side effects of medication; and functional restrictions. Lowe v. Apfel, 226 F.3d 969, 971-72 (8th Cir. 2000) (citing Polaski). "The ALJ may not discount a claimant's complaints solely because they are not fully supported by the objective medical evidence, but the complaints may be discounted based on inconsistencies in the record as a whole." Id. at 972.

On the other hand, "[w]here adequately explained and supported, credibility findings are for the ALJ to make." Id. (citing Tang v. Apfel, 205 F.3d 1084, 1087 (8th Cir. 2000)). The ALJ is not required to discuss methodically each Polaski consideration, so long as the ALJ acknowledges and examines those considerations (as she did here[5]) before discounting the subjective complaints. Id. (citing Brown v. Chater, 87 F.3d 963, 966 (8th Cir.1996)).

The ALJ for good cause expressly discredited Smith's complaints of disabling pain. She noted that Smith took only over-the-counter medications,[6] had not had medical treatment in the prior fifteen months, and her physical examinations generally revealed full range of motion. Only conservative treatment was been recommended. No treating doctors imposed work restrictions. The state disability determinations doctor (Dr. Chael) had concluded that Smith did not have severe impairments. These are valid reasons to discount credibility. Vandenboom v. Barnhart, 421 F.3d 745, 750 (8th Cir. 2005) (credibility properly discounted when no physician placed limits on claimant's work activities); Rankin v. Apfel, 195 F.3d 427, 430 (8th Cir. 1999) (relying primarily on over-the-counter pain remedies rather than prescriptions for stronger medications supported ALJ's credibility determination); Shelton v. Chater, 87 F.3d 992, 995 (8th Cir. 1996) (recommendations of only conservative treatment

---

[5](Tr. 17-20.)

[6]For a brief time, Smith took Vioxx and reported that it relieved her pain. (Tr. 209.)

appropriate factor to consider in discounting credibility); Brown, 87 F.3d at 956 ("Although an adjudicator may not discount a claimant's subjective complaints solely because they are not supported by the objective medical evidence, the absence of such evidence is one factor to be considered in evaluating the credibility of the claimant's testimony and complaints.").

Smith asserts that the gaps in her treatment, as well as the failure to fill some of the prescriptions written for her, cannot be grounds for discounting her credibility because they were caused by her economic situation. However, the record reflects that Smith received care from a low income clinic, the Renaissance Health Clinic (Tr. 236, 243-46), and there is no evidence that Smith was ever denied treatment for lack of funds. Under these circumstances, the ALJ properly considered the gap in treatment and failure to fill prescriptions in assessing Smith's credibility. Goff v. Barnhart, 421 F.3d 785, 793 (8th Cir. 2005) (rejecting assertion that failure to take prescription medications was unacceptable ground for discounting credibility when claimant could not afford medical treatment, as there was "no evidence [the claimant] was ever denied medical treatment due to financial reasons.").

### *III. CONCLUSION*

The record in this case is clear, and the ALJ was not required to obtain a consultative examination. Smith's assertions of totally disabling pain were only partially credible. There is substantial evidence on the record as a whole to support the Commissioner's RFC findings. I affirm the decision of the Commissioner.

IT IS ORDERED that the appeal is denied, and judgment shall be entered for the defendant by separate document.

June 28, 2006.                    BY THE COURT:

                                  *s/Richard G. Kopf*
                                  United States District Judge